

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LARRY HARRIS, #A-61614

DARNELL PALACIO, #N-20223 et al.

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

GEORGE RYAN, GOVERNOR OF

THE STATE OF ILLINOIS;

DONALD N. SNYDER, JR., DIRECTOR,

ILLINOIS DEPT. OF CORRECTIONS

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: **00 C50390**
(To be supplied by the Clerk of this Court)

CHECK ONE ONLY:

_____ COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION
1983 U.S. Code (state, county, or municipal defendants)

_____ COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION),
TITLE 28 SECTION 1331(a) U.S. Code (federal defendants)

\_\_\_X\_\_\_ OTHER (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I.  **Plaintiff(s):**

    A.   Name: LARRY HARRIS / DARNELL PALACIO / et al.

    B.   List all aliases: LARRY DOE / NONE

    C.   Prisoner identification number: #A-61614 / #N-20233

    D.   Place of present confinement: DIXON CORRECTIONAL CENTER, DIXON, IL.

    E.   Address: 2600 N. BRINTON AVE., DIXON, IL. 61021

    (If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

II.  **Defendant(s):**

    (In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.   Defendant: GEORGE RYAN

        Title: GOVERNOR OF THE STATE OF ILLINOIS

        Place of Employment:

    B.   Defendant: DONALD SNYDER

        Title: DIRECTOR OF ILLINOIS DEPARTMENT OF CORRECTIONS

        Place of Employment: 200 W. RANDOLPH ST., STATE OF ILL. BLDG.

    C.   Defendant:

        Title:

        Place of Employment:

    (If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

## III. Exhaustion of Administrative Remedies

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.   Is there a grievance procedure available at your institution?

YES ( x )  NO ( )   If there is no grievance procedure, skip to F.

B.   Have you filed a grievance concerning the facts in this complaint?

YES ( )  NO ( )   **SEE ATTACHED**

C.   If your answer is **YES**:

1.   What steps did you take?
A FORMAL GRIEVANCE WAS FILED TO THE INSTITUTIONAL INQUIRY BOARD

IN WRITING. NO ACTION WAS TAKEN TO GRANT RELIEF BECAUSE THE

BOARD DID NOT HAVE LEGAL AUTHORITY TO DO WHAT A COURT HAD TO DO.

2.   What was the result?
NO ACTION TAKEN.

3.   If the grievance was not resolved to your satisfaction, did you appeal?

What was the result (if there was no procedure for appeal, so state.)

D.   If your answer is **NO**, explain why not:
N/A

E.   Is the grievance procedure now completed?   YES ( x )   NO ( )

F.   If there is no grievance procedure in the institution, did you complain to authorities?   YES ( )   NO ( x )

G.   If your answer is **YES**:

  1.   What steps did you take?

  _____**N/A**_____

  _____

  _____

  2.   What was the result?
  _____**N/A**_____

  _____

  _____

H.   If your answer is **NO**, explain why not:
  **N/A**

  _____

  _____

  _____

IV. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):

A. Name of case and docket number: HARRIS v. SCHUMAN
   S.D. Ill/East St. Louis/95-49-PER (on appeal)

B. Approximate date of filing lawsuit: May 21, 1995

C. List all plaintiffs (if you had co-plaintiffs), including any aliases:
   LARRY HARRIS (aka LARRY DOE)

D. List all defendants: HARRY SCHUMAN, LINDA DILLON, BILL JONES,
   PATRICIA WILSON

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): SOUTHERN DISTRICT OF ILLINOIS/EAST ST. LOUIS OFFICE

F. Name of judge to whom case was assigned: PAUL E. RILEY

G. Basic claim made: DENIAL OF DUE PROCESS AND DELIBERATE INDIFFERENCE TO EFFECTIVE MEDICAL CARE FOR SERIOUS MEDICAL NEEDS

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): ON APPEAL BEFORE THE SEVENTH CIRCUIT AFTER DISMISSAL BY THE DISTRICT COURT

H. Approximate date of disposition: STILL PENDING

DARNELL PALACIO, #N-20233 HAS NO OTHER SUITS.

IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.

V.   **Statement of Claim:**          SEE ATTACHED

State here as briefly as possible the facts of your case.  Describe precisely how each defendant is involved.  Include also the names of other persons involved, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

## Additional lawsuits:

2. <u>Larry Doe aka Larry Harris v. Mesrobian</u>, 96-C-50257, filed June 14, 1996, in the Central District of Illinois U.S. District Court; defendants were Andreas Mesrobian, Correctional Officer Heyhe. The judge assigned to the case is unknown. The basic claim of lawsuit alleged a denial of due process, deliberate indifference to serious medical needs. Case dismissed at District Court level, then appealed to the Seventh Circuit. Still pending.

3. <u>Larry Doe aka Larry Harris v. Carol Beister, Morrissey, Nancy Smith</u>, 96-C-50219, filed July of 1996, in the Central District of Illinois U.S. District Court; defendants were Carol Beister, Morrissey, Nancy Smith. The judge assigned to the case is unknown. The basic claim of lawsuit alleged a denial of access to legal library which constituted a denial of access to the courts. Case dismissed at District Court level, then appealed to the Seventh Circuit. Still pending.

4. <u>Larry Harris v. Judge Derkins</u>, Northern District of Illinois/Eastern Division; defendant was Judge Derkins of the Cook County Criminal Courts division. The judge assigned to the case was the Hon. Anne Williams. The basic claim of lawsuit was discrimination and a denial of due process. Case dismissed.

5. <u>Larry Harris v. Mesrobian</u>, 97-39, Circuit Court of Lee County; defendant was Mesrobian. The judge assigned to the case was Thomas Magdich. The basic claim in this lawsuit was discrimination under the Americans with Disabilities Act, denial of appropriate medical care. Case still pending before the Circuit Court.

5a

**VI.    Relief:**

State briefly exactly what you want the court to do for you.  Make no legal arguments. Cite no cases or statutes.

_____

_____

_____

_____

_____

_____

_____

_____

I declare under penalty of perjury that all facts given in the complaint are true and correct.

Signed this _____ day of _____ , 19\_\_\_\_

*Larry Harris* A61614

*Darnell Palacios* N20223

_____

(Signature of plaintiff or plaintiffs)

_____

(I.D. Number)

DIXON CORRECTIONAL CENTER, DIXON, IL. 2600 NORTH BRINTON AVE. DIXON, IL. 61021

(Address)

IN THE
UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY HARRIS, DAVID WASHINGTON, MARSHAL McNEAL, DARNELL PALACIO, RICHARD ROTH-ENBERGER, MICHAEL C. HARRIS, HERSHEL BLAKE, RICHARD BECKER, SHANNON OLTREMARI, JOHNNY CAMPBELL, EDWARD HAMILTON, ROD-NEY SUANE, CHARLES VLK,<br><br>            Plaintiffs,<br><br>        v.<br><br>GEORGE RYAN - GOVERNOR OF THE STATE OF ILLINOIS, DONALD SNYDER - DIRECTOR OF THE ILLINOIS DEPT. OF CORRECTIONS,<br><br>            Defendants. | CASE NO. _____ |

CLASS ACTION BY INDIVIDUALS WITH MENTAL HANDICAPS
FOR DAMAGES AND INJUNCTIVE RELIEF
[28 USC §§1331, 1391(b)(2), 1391(c);
42 USC §§12181(7)(F), 12182(a), 12205]

This Class Action is brought by Larry Harris, on behalf of all inmates with mental illnesses, physical and/or mental disability, housed in the Dixon Psychiatric Unit(DPU), or the Dixon Special Treatment Center(STC). The cost of this Action should be assessed against inmate Plaintiff Larry Harris and not against the Class as a whole. If this Court should find that Plaintiff Harris can not proceed without paying the total cost of this proceeding, or he can not proceed under 28 USC 1915(g), then the cost should be assessed to inmate Plaintiff Darnell Palacio. The main Plaintiffs' and those similarly situated only appear in name to show that they have legal standing.

JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 USC §1331 for claims arising under the Americans with Disabilities Act(ADA) (42 USC §§12101 et seq. [ADA §§2 et seq.²]). There is an actual controversy between Plaint-iffs and Defendants.

NATURE OF THE ACTION

This is an Action brought by and on behalf of inmates at the Dixon Psy-chiatric Unit and the Special Treatment Center, under color of law, who are

subjected by Defendants George Ryan and Donald Snyder to violations of their
constitutional rights under the 14th Amendment of the U.S. Constitution and
the Americans with Disabilities Act(ADA) to surcharges, fees, and co-payments,
which state in part, under 28 CFR 35, 130(f)(2000), and Department of Justice
regulations:

"A public entity may not place a surcharge, fee, or co-payment, on a par-
ticular individual with a disability or any group of individuals with disabil-
ities, to cover costs of such measures, such as the provision of auxiliary
aids or program accessibility, that are required to provide that individual
or group with the non-discriminatory treatment required by the Act or this
part."

The regulations' scope goes further than simply requiring states to pro-
vide access to their facilities and program, it bars the sharing of any costs
of such measures, a highly intrusive limit on the core state power to choose
revenue sources.

## CLASS ACTION ALLEGATIONS

(1)   Plaintiffs' bring this Action as a Class Action, pursuant to Rule
23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

(2)   The Class consists of all persons who are detained by the Illinois
Department of Corrections, Dixon Psychiatric Unit and Special Treatment Cen-
ter, that are handicapped persons convicted of a crime.

(3)   This Class is so numerous that joinder of all persons is impracti-
cal.   Plaintiffs are informed to believe that all males in the Illinois De-
partment of Corrections(IDOC), Dixon Psychiatric Unit(DPU) and Special Treat-
ment Center(STC), and probably those that are detained at other correctional
facilities, who suffer from physical and/or mental disabilities, are charged
a surcharge, fee, or co-payment in violation of the Americans with Disabili-
ties Act(ADA).   Plaintiffs believe that Class members number well over 500.

(4)   Plaintiffs will fairly and adequately protect the interest of all
Class members as they are members of the Class and their claims are typical
of the Class of all Class members.   Each of the Plaintiffs is incensed at the
treatment accorded the Class members, and will aggressively pursue the inter-
ests of the entire Class.   Plaintiffs' interest in obtaining injunctive re-
lief and monetary damages for the violation of constitutional rights and pri-

vileges, are consistent with, and not antagonistic to, those of any person within the Class.

The common questions of law and fact include:

1) Whether Defendants had policy and practice to charge mentally-ill inmates a $2.00 surcharge, fee, or co-payment.

2) Whether the Defendants had knowledge of the conduct alleged herein.

3) Whether the conduct alleged herein is in violation of the 9th or 14th Amendments to the U.S. Constitution, and Title USCA Const.Amends. 14; Americans with Disabilities Act of 1990, §202, 42 USCA §12132; 28 CFR §35.1309f).

4) Whether Plaintiffs and the members of the plaintiff class are entitled to an award of compensatory and/or punitive damages; including interest on any payments already made.

The wrongful conduct alleged herein has been conducted generally upon all members of the plaintiff class, in that the surcharges, fees, or co-payments are pursuant to an established plan, policy or procedure of the IDOC.

The common questions of fact and law predominate over questions affecting only individual Class members. A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

a) A multiplicity of suits with consequential burden on the courts and defendants should be avoided.

b) It would be virtually impossible for all Class members to intervene as parties/plaintiffs in this Action.

c) Upon adjudication of Defendants liability, claims of the Class members can be determined by this Court.

## THE PARTIES

Plaintiffs are all male citizens of the United States who are held in custody by the IDOC's DPU, by virtue of their convictions. Plaintiffs' true names are:

Plaintiff Larry Harris, and those similarly situated, is dual-diagnosed and co-infected with the AIDS virus and Hepatitus C. He is susceptible to numerous viral infections and symptoms from the AIDS virus itself, and the numerous medications that he has to ingest for survival.

Plaintiff David Washington, and those similarly situated, suffers from

- 3 -

numerous mental illnesses, and is subjected to enforced psychotropic medications and their side effects.

Plaintiff Marshal McNeal, and those similarly situated, suffers from numerous mental illnesses, and is subjected to psychotropic medications and their side effects.

Plaintiff Darnell Palacio, and those similarly situated, suffers from mental illness, and by virtue of his mental illness and the ADA, he is exempt from any surcharge, fee, or co-payment based on his handicap. He has been denied medical treatment because he refused to sign a voucher.

Plaintiff Richard Rothenberger, and those similarly situated, suffers from numerous mental illnesses and under the ADA he is handicapped. He should not be assessed a surcharge, fee, or co-payment.

Plaintiff Michael C. Harris, and those similarly situated, is on voluntary psychotropic medication, and determined to be suffering from mental illness according to his psychiatrist. Under the ADA he should be exempt from surcharges, fees, or co-payments.

Plaintiff Hershel Blake, and those similarly situated, has been determined by a psychiatrist to be suffering from mental illness and should not be assessed a surcharge, fee, or co-payment.

Plaintiff Richard Becker, and those similarly situated, has been determined by a psychiatrist to be suffering from mental illness, and is prescribed voluntary psychotropic medication and should not be assessed a surcharge, fee, or co-payment.

Plaintiff Johnny Campbell, and those similarly situated, has been determined by a psychiatrist as mentally ill and should not be assessed a surcharge, fee, or co-payment.

Plaintiff Edward Hamilton, and those similarly situated, has been diagnosed as mentally ill by a psychiatrist and should not be assessed a surcharge, fee, or co-payment.

Plaintiff Shannon Oltremari, and those similarly situated, has been determined to be mentally ill by a psychiatrist and should be exempt from any surcharges, fees, or co-payments.

Plaintiff Rodney Suane, and those similarly situated, has been determined to be suffering from mental illness by a psychiatrist and should be exempt from any surcharges, fees, or co-payments.

Plaintiff Charles Vlk, and those similarly situated, has been diagnosed as mentally ill by a psychiatrist and is prescribed psychotropic medication. He should be exempt from any surcharge, fee, or co-payment.

Defendant George Ryan is Governor of the State of Illinois and is responsible for signing into law Public Act 91-912, which mandates the surcharge, fee, or co-payment, in direct violation of the ADA.

Defendant Donald Snyder is the Director of the Illinois Department of Corrections, and as such, is, and has been, responsible for the promulgation and implementation of policies, procedures, and practices in the IDOC, including the policy, procedures, and practices of charging mentally ill inmates a $2.00 surcharge, fee, or co-payment, in violation of the ADA.

The ADA defines disabilities as:

a) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;

b) A record of such impairment; or

c) Being regarded as having such impairment §12102(2).

The ADA's definition of disability is drawn almost verbatim from the definition of "handicapped individual," included in the Rehabilitation Act of 1973: 29 USC §706(8)(B)(1988 ed.) [29 USCS §706(8)(B)] and the definition of "handicap" contained in the Fair Housing Amendments Act of 1988, [42 USC § 3602(h)(1)(1988 ed.) 42 USCS §3602(h)(1)]. Congress' repetition of a well-established term carries the implication that Congress intended the term to be construed in accordance with pre-existing regulatory interpretations.

In this case, Congress did more than suggest this construction, it adopted a specific statutory provision in the ADA directing as follows: "Except as otherwise provided in this chapter, nothing in this chapter shall be construed to apply a lesser standard than the standards applied under Title V of the Rehabilitation Act of 1973 (29 USC §790 et seq.)[29 USCS §790 et seq.] or the regulations issued by federal agencies pursuant to such title." [42 USC §1220(a), USCS §12201(a)].

<u>CONSTITUTIONAL VIOLATIONS</u>

House Bill 4124, now Public Act 91-912, was signed by Governor George Ryan and took effect immediately. One component of this Bill is as follows: Any non-indigent inmate in a Department of Corrections facility that receives medical or dental services on a non-emergency basis at the correctional facility, will pay a $2.00 surcharge, fee, or co-payment to the Department. Pre-

- 5 -

viously, surcharge, fee, or co-payment was assessed if the medical or dental services were performed at a place other than the correctional facility. An inmate who has a chronic illness as defined by the Department's rules and regulations, is exempt from the $2.00 surcharge, fee, or co-payment for treatment of said chronic illness. An inmate is not subject to the surcharge, fee, or co-payment for follow-up visits ordered by a physician who is employed by or contracted with the IDOC.

Plaintiffs state that the Defendants have failed to uphold the spirit of the statute, or the limitations as they apply to inmates, and that the Defendants encompass the statute as it applies to the spirit of the law. The IDOC has failed to identify what a chronic illness is, and the side effects of medication as it is given in relation to a chronic illness, and what constitutes indigence. All inmates in the DPU and STC are assessed a surcharge, fee, or co-payment, regardless of the nature of their illness or financial status; when the plain language of the statute reads: inmates that are indigent are exempt from cost.

The ADA defines a physical or mental impairment to mean: "Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculo-skeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin and endocrine; or any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 45 CFR §84.3(j)(2)(i)(1997). Inmates at the DPU and STC are under the care of psychiatrists and psychologists, and many are on psychotropic medications. The U.S. Supreme Court, in RIGGINS v. NEVADA and HARPER v. WASHINGTON, determined these drugs to have side effects so crippling in nature that the high court declared that these drugs may not be issued to an inmate without a hearing and due process.

So, determined the U.S. Supreme Court, the side effects of these drugs are as follows: They can induce catatonic-like states, alter electroencephalographic tracings, and cause swelling of the brain. Adverse reactions include: drowsiness, excitement, restlessness, bizarre dreams, hypertension, nausea, vomiting, loss of appetite, salivation, dry mouth, perspiration, headaches, constipation, blurred vision, impotency, eczema, jaundice, tremors,

and muscle spasms.  Prolixin, for example, as with all psychotropic drugs, may cause tardive dyskinesia, an often irreversible syndrome of uncontrollable movements that can prevent a person from exercising basic functions such as driving an automobile, and neuroleptic malignant syndrome, which is 30% fatal for those who suffer from it.  The risk of side effects increases over time.  (See WASHINGTON v. HARPER, 494 U.S. 210, *; 110 S.Ct. 1208, **).

The Director of the Illinois Department of Corrections, Donald Synder, and his employees at the DPU and STC, have created a scheme which exploits mentally ill inmates.  The scheme works as follows:

An inmate is required to pay a $2.00 surcharge, fee, or co-payment, whether or not he sees the doctor or nurse.  The inmate is usually prescribed aspirin or maalox, or some other over-the-counter drug by the nurse, for a period of 3 days.  If the illness persists, then the inmate is charged another $2.00 for each additional time he sees the nurse.  If this illness is related to some psychotropic medication, then it becomes a recurring charge.  The vagueness of the statute, along with the side effects of the psychotropic medication, creates a monopoly of revenue for his proprietors.  This scheme goes even further, it requires a $2.00 surcharge, fee, or co-payment even if there is no medication issued.  If a prescription medication is required, it takes from 5-8 days before it is administered.

## THE VIOLATIONS

The policies, procedures, practices and acts of the Defendants, alleged in the violations of the rights of Plaintiffs and members of the Class, under the 5th, 9th, and 14th Amendments of the U.S. Constitution, and are therefore violative.  This surcharge, fee, or co-payment is charged to the accounts of inmates at the DPU and STC, who are legally recognized persons with disabilities under the ADA, and is in violation of the rights, privileges, and immunities of the Plaintiffs and Class members, under the 14th Amendment of the U.S. Constitution.

This surcharge, fee, or co-payment constitutes gross neglect and abuse of mentally ill individuals, that are being subjected to psychotropic medications and those that suffer from such illnesses as: paranoia, schizophrenia, manic-depression, hypochondria, border-line personalities, and a variety of other illnesses.

The procedures, practices and acts stated above were undertaken, aided, authorized, supervised or consented to by Defendants, with malice, and willful and wanton desire and design, to violate the ADA, and with deliberate indifference to and reckless disregard of the rights, privileges, and immunities of Plaintiffs and Class members, under the 4th, 9th, and 14th Amendments of the U.S. Constitution, as set forth above.

As a result of this, the IDOC's $2.00 surcharge, fee, or co-payment, the Plaintiffs and those similarly situated, are afraid to report their illnesses to medical officials, for fear that they will be charged and not able to obtain necessary personal hygiene products, or tobacco products which they have become addicted to (nicotine) during their stay in the IDOC, and also when they were in the free world.

Plaintiffs and Class members will continue to suffer gross violations of their constitutional rights and gross indignities, each of which constitutes irreparable injury, for which Plaintiffs have no adequate remedy at law.

As a result of the policies, procedures, practices, and acts of Defendants, Plaintiffs and Class members have suffered violations of their rights, privileges, and immunities under the Constitution, and have suffered severe emotional and psychological distress, anguish, anxiety, injury, pain and physical suffering, due to the willful, wanton deliberate misconduct of the Defendants.

The State of Illinois and the IDOC are responsible for the administration of the statutory scheme mentioned above. Plaintiffs state that the Defendants imposition of a surcharge, fee, or co-payment to remedy costs violates 42 USC §12132 of the ADA, and 28 CFR §35.130(f) of the regulatory surcharge, fee, or co-payment provisions. Unless immediately, preliminarily, and permanently enjoined from continuing to subject the mentally ill to surcharges, fees, or co-payments, the Defendants will continue to engage in the willful, wanton and deliberate violation of the constitutional rights of mentally ill inmates, and Plaintiffs and Class members will continue to suffer gross violations of their constitutional rights and gross indignities, each of which constitutes irreparable injury for which Plaintiffs have no adequate remedy at law.

Plaintiffs ask that this Honorable Court enter an Order:

1) Finding that this action should proceed as a Class Action under Rule

23, Federal Rules of Civil Procedure.

2) Preliminarily and permanently restraining, enjoining, and prohibiting the Defendants from undertaking, enforcing, maintaining, or adopting any policies, procedures, practices, or acts by which any person with a mental illness or handicap with the IDOC's Dixon Psychiatric Unit(DPU) and Special Treatment Center(STC) from being assessed a $2.00 surcharge, fee, or co-payment.

The majority of the inmates housed in the prison's mental health unit have consented to the administration of psychotropic drugs. Sometimes these drugs, called neuroleptics or psychotropic drugs, are medications commonly used in treating mental disorders, such as schizophrenia. Some inmates are on enforced psychotropic drugs. Either way, the results and/or side effects are the same.

The effect of these and similar drugs is to alter the chemical balance in the brain. The desired result being that the medication will assist the patient in organizing his thought processes and regaining a rational state of mind. The drugs administered to Plaintiffs include, but are not limited to: Trialafon, Haldol, Prolixin, Taractan, Loxitane, Mellaril, Prozac, Navane, Paxil, and Zoloft.

In the past, the Defendants have argued that these drugs are necessary and effective for furthering a compelling state interest, such as enforced medication. The Plaintiffs state that this interest should not reach so far that it alters the physical state of Plaintiffs, and those similarly situated physical anatomies (side effects).

The state is allowed to benefit from the afflictions caused by the drugs they force upon the inmates in the interest of a compelling state concern for the mental well-being of the Plaintiffs. Plaintiffs contend that the state, under the mandate of the due process clause, overrides their choice to refuse psychotropic drugs and then assess them a surcharge, fee, or co-payment for those afflictions and illnesses that those same drugs induce.

### UNCONSTITUTIONALITY OF THE STATUTE AND THE MISUSE OF THIS STATUTE BY THE DEPARTMENT OF CORRECTIONS

The Plaintiffs state that this statute is unconstitutionally vague and ambiguous. It is vague because it fails to adequately define indigence and

- 9 -

what constitutes medical services. For example, an inmate is not indigent by IDOC standards if he has any funds in his trust account, no matter how small. If he has no funds in his account at the time of treatment, the surcharge, fee or co-payment is held in arrears on his account until future funds become available to him; at which time the surcharge, fee or co-payment is then debited from his account. Medical services are so vaguely defined, they encompass anything and everything. If an inmate simply asks the nurse a medical question that requires no medication or treatment, he is assessed a $2.00 surcharge, fee or co-payment. If the inmate refuses to sign a money voucher, the $2.00 surcharge, fee or co-payment is still debited from his account or medical services are withheld.

The statute is ambiguous, because it allows the IDOC too much discretion in determining what a chronic illness is, and when an illness is related to a chronic illness. In other words, if an inmate has a chronic illness as defined by IDOC rules and regulations, takes medication for that illness, and has adverse side effects from that medication, the adverse side effects are not exempt from the $2.00 surcharge, fee or co-payment. The statute in its present form can be used as an oppressive tool when applied to minorities and poor white inmates.

## ILLUSTRATION

Inmate Joe committed a criminal act by burglarizing his family's home. He was convicted and sentenced to serve 3 years in the IDOC. He receives no visits or money from outside sources. Because of his mental illness, the only type of institutional job he can get is as a porter, paying $15 a month. He catches a common cold, stuffy nose, congestion, and a fever. He applies for sick call, pays $2.00, and sees only the nurse. He is given cold medication for 3 days. The flu-like symptoms fail to cease in that time period, but his medication order has expired. Now, he must see only the nurse again and pay another $2.00. If the illness still persists, he again repeats this procedure. Only after the third time will he be referred to the doctor, which could take up to seven days. If a prescribed drug is warranted it could take up to 8 days before it is administered. Thus, an inmate could have to wait up to 24 days before receiving proper medical treatment and be assessed $8.00 in surcharges, fees, or co-payments.

Inmate Joe has now spent $8 of the $15 he is paid. He now only has $7 in which to purchase soap, toothpaste, writing materials, etc. Does this $15 pay make Joe indigent? The statute's scope has been taken beyond the letter of the plain language of the statute. To compound the issues, those inmates who are confined to segregation get to see the doctor weekly, as he makes his rounds of each room. To make matters worse, those inmates do not pay a $2.00 surcharge, fee or co-payment. This, by far, is totally unequal and biased treatment for those with disabilities.

The IDOC has blatantly failed to follow the language of the statute itself, and several Class members have been denied access to medical treatment because they refused to sign a money voucher for $2. This Court should take notice that refusing to sign a money voucher is <u>not</u> refusing medical treatment. The statute states in plain language that if the inmate is indigent he is exempt from costs. The statute further states that if an inmate has a chronic illness, as defined by the IDOC, then that illness, not its side effects, are exempt. What the statute does not state is that the medication one receives as a condition of that chronic illness, may produce side effects so deadly, that the chronic illness itself will no longer be a threat, making a scheme and monopoly so interlocked that whether one has a chronic illness or not, he is subjected to an ongoing cycle of payments.

### VIOLATIONS UNDER AMERICANS with DISABILITIES ACT

Title II of the ADA requires public entities to ensure that "no qualified individuals with a disability shall by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities" provided by the entities, 42 USC §12132. Congress directed the Department of Justice to develop regulations to implement the public services provisions of Title II. (See 42 USC §12134(a).) In accordance with Congress' mandate, the Department of Justice regulations further provide:

> A public entity may not place a surcharge on a particular
> individual with a disability or any group of individuals
> with disabilities, to cover the costs of measures, such
> as the provision of auxiliary aids or program accessi-
> bility, that are required to provide that individual or
> group with nondiscriminatory treatment required by the
> Act or this part.

- 11 -

ID §35.130(F):  The intent of this surcharge provision is to "prevent [] disabled persons from being denied access to ADA-mandated benefits or services because they do not have funds to pay for them, and [to] spread [] the costs of such benefits or services to all taxpayers."

All Plaintiffs, and most Class members have family members who are citizens of the United States.  They pay taxes so that their sons and daughters may receive food, clothes, and medical care while they are incarcerated and pay their debt to society.  These surcharges, fees, or co-payments, apart from the taxes that their relatives pay to provide them these services, violate equal protection, especially when the party being charged and their relatives are unaware of the way that these surcharges, fees, or co-payments are being spent.

On/about 9/20/00, Plaintiff David Washington informed the nurse that he was having dizzy spells and headaches based on his psychotropic medication (which is enforced).  He received no medical treatment for his complaint, and was assessed a $2 fee.

Plaintiff Darnell Palacio is a mentally ill inmate, and on 10/9/00 he informed the nurse that he was having back pain.  After being assessed the $2 fee, he was placed on Tylenol for 3 days and told that if the pain persisted he would have to pay another $2.  If the pain still persisted, he would again pay $2; in which 3 visits would cost him $6 total.

Plaintiff Charles Vlk is a mentally ill inmate, and on 10/9/00 he told the nurse he had severe pain in his hip and lower leg.  After being assessed $2 he was placed on Tylenol for 3 days, and told that if the pain persisted beyond 3 days he would have to pay another $2.  He was told that he would not have access to the doctor until after 3 sick calls, and paying $6 total.  Yet weekly doctor visits for those in segregation are free.

Lastly, before a mentally ill inmate is allowed to see a medical doctor, for most illnesses, he must attend the nurses sick call at least 3 times; but not if he is in segregation.  This will cost him $2 each time he attends sick call (without being examined by a doctor), totaling a $6 fee.  He if works, making $15 a month, that is 40% of his pay for costs of his related physical and/or mental illness.

The three-time rule before you can see a doctor is mandatory for most illnesses (only for those not confined to segregation).  This rule violates

the 8th and 14th Amendments to the U.S. Constitution, in that it forces DPU and STC inmates, who are already physically and mentally challenged, to withhold physical illnesses from treatment, in fear that they might not be able to purchase necessities that more fortunate inmates, who are not mentally ill, are able to enjoy, making their incarceration more bearable.

The 8th Amendment of the U.S. Constitution states that cruel and unusual punishment may not be inflicted on prisoners, regardless as to whether that infliction is caused by fear, cohersion, or extortion. The end result in this case is the physical suffering upon the mentally afflicted. For example, on/about 9/25/00 Plaintiff Larry Harris applied for sick call, and was told by nurse Healy that he had to sign a $2 money voucher. When he refused to sign, the nurse refused to treat him or speak any further with him.

## IN CONCLUSION

The scenario for receiving medical services reads like this: An inmate becomes ill. He must first go through 3 rounds of 3-day over-the-counter medication by the nurse (9 days & $6) before he is placed in the physicians rounds (which could take up to 7 more days). If a prescription drug is needed, it will require 5-8 more days before it is administered. Thus, an inmate could have to wait up to 24 days before receiving proper medical treatment, and be assessed $8 in surcharges, fees, or co-payments.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgement as follows:

For injunctive relief ordering Defendants to:

a)  Refrain from discriminating, in any manner, by failing or refusing to extend to any individual who has or is regarded as having a handicap, the full and equal enjoyment of and access to Defendants' treatment, services and/or facilities of any kind whatsoever, on the basis (either in whole or in part) of the fact or perception that such individuals have handicaps.

b)  For an award of compensatory damages to Plaintiffs equal to the injury they have/are suffering, due to Defendants' discriminatory practices, in an amount sufficient to punish and set an example.

c)  For an award of exemplary and punitive damages against Defendants in an amount to be determined at trial.

- 13 -

A61614
/s/ _____ HARRIS

/s/ Hershel BLAKE K 71066

#B11629
/s/ Richard Becker

N-23132
/s/ Edward Hamilton

B09089
/s/ Richard Rickerley

N11680
/s/ Marshall McNeal

CLASS MEMBERS WITHSTANDING.

/s/ Darnell Palacio N20223

/s/ Henry Arimenta B02799

/s/ David Washington B58413

/s/ Rodney Sware A-00198

/s/ R-25088 M,C HARR,s

/s/ Charlee Vlk N72665

Johnny Campbell B0008